NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0501n.06

No. 08-3981

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 21, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MOHAMMED ATA YACOUB, | ) | |
| | ) | ON PETITION FOR REVIEW |
| *Petitioner*, | ) | FROM A DECISION OF THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | O P I N I O N |
| | ) | |
| *Respondent*. | ) | |

BEFORE: GILMAN and McKEAGUE, Circuit Judges; GRAHAM, District Judge.[*]

GRAHAM, District Judge. Petitioner, Mohammed Yacoub, seeks this court's review of the final order of removal by the Board of Immigration Appeals ("Board" or "BIA") denying his applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). For the reasons that follow, we DENY Yacoub's petition for review.

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Yacoub, who was born in the West Bank, entered the United States on January 22, 2006, as a nonimmigrant visitor. In February 2007, the Immigration and Naturalization Services, which is now part of the Department of Homeland Security, initiated removal proceedings concerning Yacoub by filing a "Notice to Appear" alleging that Yacoub failed to comply with the conditions of his nonimmigrant status and remained in the United States beyond the time permitted. Yacoub subsequently filed an application for asylum and withholding of removal under the INA and the CAT. He claimed persecution and torture on the basis of his political opinion and nationality, which he identified as "Palestinian Authority." He stated his belief that if he returned to his home country, he would be harmed by the Israeli government and Hamas. He conceded removability on the basis that he failed to depart the United States as required by the terms of his nonimmigrant visa. After a change in venue, removal proceedings were held in September 2007 before an immigration judge ("IJ").

Yacoub was the only person to testify at the removal hearing, and his testimony indicated the following. Yacoub lived in an Israeli controlled area of the West Bank. On three separate occasions, Yacoub was arrested by Israeli officials when he, for purposes of finding work, illegally entered Israel by failing to use the proper checkpoints. Because he was represented by an attorney, he was held for two months instead of five or six months. Israeli officials put him in a separate jail cell, gave him little food, and slapped him with their hands. He sustained an ear injury and a broken nose as a result of Israeli soldiers physically harming him.

Yacoub, along with his family, are supporters of Fatah, which has a tense relationship with Hamas. Yacoub witnessed gun battles between supporters of Fatah and Hamas which resulted in deaths on both sides. Yacoub alleged that masked men, who he identified as Hamas, attempted to abduct him on two or three occasions. He escaped from the masked men because of his family's connections with another group. Hamas did not appear during the day in the area of his residence, and the attempted abductions occurred at night.

Yacoub testified that he was a police officer for the Palestinian Authority from 1991 until 1993, and that he helped protect president Yasir Arafat. He left police service in 1993 because the money was not sufficient to support him and his family. In 1995, he received training with the Presidential Guard and worked for a few months that year in security, but it was not official duty. He was a police officer in 1998. Yacoub denied belonging to any political organization.

In 2004, Yacoub traveled from the West Bank to China, where he remained for twenty days and attempted to apply for asylum. Unsatisfied with the situation in China, he traveled to Italy. The Italians denied him admission into the country and sent him back to China. After returning to China, he traveled to Dubai on his way back to the West Bank. In 2006, he traveled to the United States with a nonimmigrant visa issued by the United States Consulate in Jerusalem. Subsequently, removal proceedings were initiated concerning Yacoub because of his failure to comply with his nonimmigrant visa.

After the hearing on the merits, the IJ denied Yacoub's request for asylum, withholding of removal, and protection under the CAT. The IJ found Yacoub to be not credible and rejected his

claims regarding his stated fear of the Israeli government and Hamas. The IJ ordered Yacoub to be removed to Palestine or, in the alternative, to Israel. The Board adopted and affirmed the decision of the IJ. The Board was not persuaded that the IJ's adverse credibility finding was clearly erroneous. The Board accordingly dismissed Yacoub's appeal. Yacoub now petitions this court under 8 U.S.C. § 1252(a) for review of the Board's denial of his requests for relief. According to Yacoub, the Board erred in denying his requests for asylum, withholding of removal, and relief under the CAT.

## II. LAW AND ANALYSIS

### A. Standard of Review

Generally, appellate courts review the Board's opinion rather than the opinion of the IJ. However, when the Board adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the Board, becomes the basis for review. *Ka v. Gonzales*, 236 F. App'x 189, 191 (6th Cir. 2007) (citing *Singh v. Ashcroft*, 398 F.3d 396, 400-01 (6th Cir. 2005)). In such a situation, the reviewing court "directly reviews the decision of the IJ while considering the additional comment made by the BIA." *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007).

In the case at bar, the Board adopted the decision of the IJ, and it supplemented the decision with a statement that "[w]ithout a valid marriage, Islamic law and/or cultural norms are not recognized as the basis for adjustment of status under the immigration laws of the United States." Contrary to what is implied by the Board's statement, Yacoub did not seek adjustment of status. The issue in this matter is the denial of Yacoub's request for asylum and withholding of removal under

the INA and the CAT. Moreover, Yacoub's brief before this court does not raise any argument regarding this supplementation of the IJ's decision by the Board. Therefore, we will review the decision of the IJ, as being that of the Board, without considering the additional comment of the Board in its order.

Questions of law involving immigration proceedings are reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). In contrast, the Board's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B). Under this standard, factual findings, such as credibility determinations, must be upheld as long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005).

B. Asylum

An IJ's asylum determination requires a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant merits favorable exercise of discretion by the IJ. *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). Under 8 U.S.C. § 1101(a)(42)(A), a "refugee" is a person who is unable or unwilling to return to his or her country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The applicant carries the burden of demonstrating that he is a refugee. 8 U.S.C. § 1158(b)(1)(B). An applicant can sustain this burden of proof through his own credible testimony without corroboration. 8 C.F.R. § 208.13. As indicated above, the IJ found Yacoub not credible in connection with the removal

proceeding. The IJ concluded that Yacoub failed to meet his burden of proof in demonstrating a well-founded fear of persecution in order to qualify for asylum. Yacoub challenges these determinations.

Even though an IJ's adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Furthermore, in *Sylla*, at 926, this court stated that an adverse credibility determination must relate to "issues that go to the heart of the applicant's claim." However, the REAL ID Act of 2005, which applies to applications filed after May 11, 2005, changes the standards governing credibility determinations, making it unnecessary for inconsistencies, inaccuracies and falsehoods to go to the heart of the applicant's claim. *See Amir v. Gonzales*, 467 F.3d 921, 925 n. 4 (6th Cir. 2006) (citing 8 U.S.C. § 1158(b)(1)(B)(iii)). Because Yacoub filed his application after May 11, 2005, the REAL ID Act of 2005 applies.

As to credibility determinations in an asylum application proceeding, 8 U.S.C. § 1158(b)(1)(B)(iii) provides as follows:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no

adverse credibility determination is explicitly made, the applicant or witness shall
have a rebuttable presumption of credibility on appeal.

In making his adverse credibility determination, the IJ found Yacoub's testimony to be "very
vague and generalized" and not responsive to questions asked. The IJ found that Yacoub's testimony
differed from his application for relief, specifically citing the evidence relating to Yacoub's time as
a police officer. The IJ also cited Yacoub's denial that he was a member of the Palestinian
Liberation Authority ("PLO"), even though there is a document in the record indicating that he is a
member in good standing with that organization. Additionally, the IJ found Yacoub's testimony
regarding his travels to China, Italy, and Dubai "to be odd, to say the least."

According to Yacoub, the inconsistencies cited by the IJ did not exist or their significance
was otherwise exaggerated. In support of this contention, Yacoub argues that the alleged
inconsistency as to when he worked as a police officer existed only as to the date of commencement,
was adequately explained, and could not support the adverse credibility finding. Yacoub further
argues that the IJ erroneously found his testimony, regarding whether he obtained a job as a result
of his presidential guard training, to be inconsistent. Yacoub asserts that the IJ's finding that his
testimony on this issue was inconsistent was based on the incorrect finding that Yacoub denied any
work with the police after 1993. Yacoub suggests that the IJ failed to understand the distinction
between his "official" and "unofficial" police work, and did not ask for clarification as to the
distinction. In sum, Yacoub contends that if the totality of the circumstances was considered, any
discrepancy in his testimony regarding his police service should have been viewed as insignificant
and not probative of his credibility.

Contrary to Yacoub's contentions, it was not unreasonable for the IJ to find inconsistencies in the evidence regarding Yacoub's police service, and there is no indication that the IJ gave these inconsistencies undue weight in analyzing Yacoub's credibility. Yacoub's asylum application indicated that, beginning in 1989, he became a police officer in the Palestinian Authority, and that he held that position for two or three years. Yacoub testified that he was a member of the Presidential Security Detail from 1991 until 1993, and he denied any "official" police service after that period. However, Yacoub acknowledged at the removal proceeding that he attended presidential guard training in 1995, and that, although initially stating that he did not get a job in connection with the training, he subsequently stated that he worked for a few months but then left due to insufficient compensation. He also acknowledged that he was a police officer in 1998, not 1989, as indicated in the asylum application. Although the inconsistencies between Yacoub's testimony at the hearing and his asylum application regarding when he worked as a police officer for the Palestinian Authority were not overwhelming, they did cast some doubt on his credibility. Furthermore, despite setting forth arguments as to the inconsistencies in the evidence concerning his police service, Yacoub does not address other, more significant, evidence that was probative of his credibility.

Evidence presented at the removal proceeding indicated that Yacoub was a member of the PLO, which conflicted with his testimony that he did not belong to any political organization. Also, evidence at the hearing indicated that, when Yacoub applied for his nonimmigrant visa at the United States Consulate in Jerusalem and was asked questions regarding his purpose for visiting the United States, he told an official at the Consulate that he was married even though he was only engaged at

the time. Inasmuch as his marital status could be relevant to the granting or denying of a visa, this evidence suggested that Yacoub had a propensity to lie to United States officials in order to visit or live in the United States.

The record also supports the IJ's observations concerning how Yacoub answered questions at the hearing. Yacoub provided somewhat vague testimony concerning the unsuccessful attempts of Hamas to abduct him. For example, when asked how he escaped, he did not fully explain the circumstances, but simply cited his family's connections and began explaining his love for his family. Yacoub's credibility regarding these alleged attempted abductions by Hamas is highly relevant to his claim of persecution. Additionally, when the IJ asked pointed questions to Yacoub regarding his statement at the U.S. Consulate regarding whether he was married, such as whether Yacoub understood the difference between being married and being engaged to be married, he was either nonresponsive or evasive to multiple questions. This evasiveness could be viewed as an attempt by Yacoub to mitigate the negative effect on his credibility of the evidence of his untruthfulness when he applied for his visa.

Moreover, the IJ's reasonable analysis specifically concerning Yacoub's claimed fear of Israeli authorities provided further support for his resolution of Yacoub's requests. This analysis discredited Yacoub's claimed fear of persecution by the Israeli government, which Yacoub had asserted in support of his application for asylum and withholding of removal. The IJ found that Yacoub's testimony demonstrated prosecution, not persecution, by Israeli officials. The IJ reasoned

that because the Israeli officials' actions were due to his illegal border crossings, if he did not illegally cross the border, then he would not be arrested in the future.

Upon review, we find that the IJ's analysis regarding Yacoub's stated fear of Israeli authorities to be reasonable and supported by the record. We further find that the evidence presented before the IJ would not compel any reasonable adjudicator to find Yacoub credible or that he established his eligibility for asylum. The record contains substantial evidence supporting the IJ's decision to deny Yacoub's asylum application on the basis that Yacoub failed to demonstrate a well-founded fear of persecution.

C. Withholding of Removal under the INA and Protection under the CAT

Under 8 U.S.C. § 1231(b)(3)(A), an alien is entitled to withholding of removal if he demonstrates that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The applicant must demonstrate a "clear probability" that he would be subject to persecution if removed. *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). Because the "clear probability" standard is stricter than the "well-founded fear" standard for asylum, an applicant who fails to meet the asylum standard necessarily also fails to meet the standard for withholding of removal. Accordingly, because Yacoub failed to meet the lower burden of proof to establish eligibility for asylum, he necessarily failed to satisfy the clear probability standard required to establish eligibility for withholding of removal under the INA. *See, e.g., Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006).

Yacoub's third basis of relief was for protection under the CAT. To obtain protection under the CAT, it is the applicant's burden to show that it is more likely than not that he would be tortured if removed to his home country. *See* 8 C.F.R. § 1208.16(c)(2). This burden is also greater than the burden required to demonstrate asylum. *Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007). Whereas asylum may be granted upon a showing of a "well-founded fear of persecution," protection under the CAT requires a showing that it is more likely than not that the applicant would not only be persecuted upon removal, but that he would be tortured. *Id.* The evidence presented by Yacoub in support of his request under the CAT was identical to the evidence presented in support of his request for asylum. Because Yacoub failed to meet the burden of proof required to establish eligibility for asylum, he cannot satisfy the higher burden for protection under the CAT. *See, e.g., Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005).

D. Due Process

Lastly, we address a due process argument set forth by Yacoub in his brief. Yacoub contends that he was denied due process because the IJ failed to consider all the evidence presented at the removal proceeding. More specifically, Yacoub argues that the IJ denied him due process by erroneously not considering evidence relating to his alleged treatment in Israel because the IJ found that Israel and Palestine are separate countries. This argument is not persuasive. The IJ did not identify Israel and Palestine as two independent countries. Such an observation would have been an incorrect statement considering that the United States currently does not recognize Palestine as an independent state. The IJ stated that Israel and Palestine are not the same country, thereby

presumably recognizing either the political distinction between the Israeli government and the Palestinian Authority or the geographic separation of Israel and the Palestinian territories. In this regard, the IJ emphasized Israel's authority as a sovereign nation to secure its borders from illegal entrants. The IJ further noted that Yacoub's arrests were in connection with his admittedly illegal border crossings. In view of these findings, the IJ reasonably resolved that Yacoub could prevent action against him by Israeli officials in the future by not illegally crossing into Israel. Thus, the IJ considered the evidence relating to Yacoub's alleged treatment in Israel, but rejected it as not proving Yacoub's entitlement to asylum or withholding of removal. Accordingly, we find Yacoub's due process argument to be unpersuasive.

### III. CONCLUSION

For the foregoing reasons, we DENY Yacoub's petition for review.