NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0539n.06

**FILED**
**Aug 23, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MOHAMED FAUSTO BARRY,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　ON PETITION FOR REVIEW FROM THE
v.　　　　　　　　　　　　　　　　　)　　BOARD OF IMMIGRATION APPEALS
　　　　　　　　　　　　　　　　　　)
ERIC H. HOLDER, JR., Attorney　　　　)
General,　　　　　　　　　　　　　　)　　OPINION
　　　　　　　　　　　　　　　　　　)
　　　　　Respondent.　　　　　　　　)
_____)

**Before: GILMAN and WHITE, Circuit Judges; and THAPAR, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Mohamed Barry, a native and citizen of Guinea, illegally entered the United States in December 2002. The following year he filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT), claiming political persecution in Guinea based on his participation and membership in an opposition political party. An Immigration Judge (IJ) conducted a hearing on the case and denied Barry's application, finding that he had failed to satisfy his burden of proof. The Board of Immigration Appeals (BIA) affirmed. For the reasons set forth below, we **DENY** Barry's petition for review.

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

The following factual background is based on Barry's testimony before the IJ. Barry was born and raised in Guinea. He is college-educated, having graduated from a university in Guinea and completed graduate studies in Morocco. His father was a longtime employee of the Guinean national government, serving as an administrator from 1963 to 2002.

When Barry returned from his graduate studies in Morocco in 1999, he joined Rally for the People of Guinea (the RPG), the main opposition political party in Guinea. He also worked in several information-technology positions and played professional soccer. Barry's duties with the party consisted of organizing sporting events that would publicize the RPG. At these events, he would distribute T-shirts and flyers that advertised the RPG's agenda. Barry's father was also a member of the RPG.

In 2002, the political situation in Guinea grew perilous for Barry and his family. Guinean President Lansana Conte, a member of the dominant political party Purity and Progress (PUP), was promoting a referendum that extended presidential terms of office from five to ten years and ended the term limits that prevented Conte from running for additional terms. The RPG opposed this referendum, and Barry himself campaigned against it. After PUP won the referendum, Barry's father lost his government job, Barry and his family—including his parents, cousin, and younger brother—were arrested, and his family's house was destroyed. Barry was held in a small jail cell and allegedly beaten and tortured while being interrogated by the police.

After nearly three months of imprisonment, Barry was released by the Guinean authorities. Barry claims that the RPG helped secure his release by applying political pressure. His family

members were released after a few weeks, but he alleges that his cousin, a teenager, was raped during her detention. Upon his release from jail, Barry was taken to a hospital where he received treatment for injuries to his head and leg.

A friend of his father, who was also a member of the RPG, then took Barry to a different city. Barry stayed with his father's friend until he flew to the United States, roughly a month later. He used another person's passport to exit Guinea and enter the United States, arriving in this country on December 9, 2002. After initially landing in New York and spending two weeks there, he moved to Columbus, Ohio. Barry submitted his application for asylum, withholding of removal, and protection under the CAT on December 1, 2003.

After the Asylum Office of the Department of Homeland Security (DHS) denied Barry's application, his case was referred to an IJ for removal proceedings. Barry received a Notice to Appear from DHS in July 2004, charging him with removability as an alien who had entered the United States without a valid visa or other entry document. He appeared before the IJ and conceded removability. A hearing was then conducted on his application.

At his asylum hearing, Barry testified to the events described above. In support of his contention that he faced future persecution if returned to Guinea, he presented two legal documents—a summons and an outstanding warrant for his arrest—both purportedly issued by the Guinean government. Barry also produced his medical records from the hospital where he was taken after his release from jail and two photographs of what he claimed was his family's destroyed house. Barry explained that these pieces of supporting evidence were mailed to him by members of the RPG party, and that the RPG had taken the photographs.

In addition, Barry provided an affidavit from a member of the RPG indicating that Barry dealt with "sporting" matters for the party. He also produced a newspaper article (and a translation) reporting that Barry was a member of the RPG, that he had been arrested for openly opposing the referendum in Guinea, and that Barry's father had been fired from his government position as a result of his membership in the RPG.

On cross-examination, Barry admitted that he was unable to recall the dates when he received the supporting evidence. He also stated that he did not keep the envelopes that the RPG had used to send him the evidence, that the evidence had not been accompanied by cover letters, that he did not know how the RPG gained access to the summons and warrant, and that he did not know who at the RPG had sent him any of the items. Barry did say that his father's friend had obtained his medical records from the hospital and forwarded them to the RPG.

He further acknowledged that he had not asked his mother or his father's friend to provide an affidavit verifying his detention by the Guinean government. Barry believed that his mother and his father's friend would be in danger had they sent him any such documents. He also testified that members of the RPG lived in New York and Washington, D.C., but that he had not been in contact with any of them.

The IJ denied Barry's application for asylum, withholding of removal, and protection under the CAT, ruling that he had failed to carry his burden of proof to demonstrate past persecution or that he had a well-founded fear of future persecution. Specifically, the IJ found that Barry's testimony about the supporting evidence was "not credible." Furthermore, the IJ reasoned that Barry should have been able to provide an affidavit from his mother, his father's friend, or someone at the RPG

confirming his allegations about his detention and mistreatment. The IJ also found that Barry's attempts to explain why he had failed to present such affidavits were "vague." Finally, the IJ was dubious that the RPG would have gone to the trouble of sending the supporting documents to Barry without including an affidavit or at least some sort of a cover letter. The IJ never mentioned the newspaper article provided by Barry that identified the latter as an RPG member, reported that he had been arrested, and stated that his father's government job was terminated as a consequence of the father's RPG membership. Barry, however, did not discuss the article as part of his testimony and his counsel did not address it during closing argument. The only person to mention the article at all was in fact the government's attorney, who objected to it for lack of authentication.

Barry appealed the IJ's decision to the BIA, which affirmed in a two-page order. The BIA adopted the IJ's reasoning regarding Barry's failure to carry his burden of proof, agreeing that the supporting documents Barry submitted with his application were "questionable" because Barry had failed to save the envelopes in which they had been sent, and that Barry should have submitted affidavits from his mother, his father's friend, or someone at the RPG who could verify his allegations. In addition, the BIA rejected Barry's contention that he was unable to get supporting affidavits from family and friends in Guinea because doing so would have put them in danger, agreeing with the IJ that this argument was undercut by Barry's ability to get other documents sent to him that purportedly support his claims. The BIA also failed to mention the newspaper article, but Barry's brief to the board never referred to this piece of evidence. Barry's timely petition for review followed.

## II. ANALYSIS

### A.     Standard of review

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Questions of law involving immigration proceedings are reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). The IJ's factual findings, on the other hand, including a determination that the petitioner failed to establish eligibility for asylum or withholding of removal, will not be disturbed if substantial evidence supports such findings. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that the IJ's rulings will be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole" (citation omitted)). "We cannot reverse such findings simply because we would have decided them differently." *Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). "These findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citations and internal quotation marks omitted).

### B.     The statutory framework

Under Section 208 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(b), the U.S. Attorney General has discretion to grant asylum to a refugee. The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

Section 101 of the INA defines a "refugee" as an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant may therefore establish eligibility for asylum by showing that he or she (1) has suffered past persecution, or (2) has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). The burden is on the applicant to establish that he or she qualifies as a refugee. 8 C.F.R. § 1208.13(a).

## C.    The IJ's determination regarding Barry's supporting evidence

The IJ's oral opinion focuses primarily on the supporting evidence that Barry presented— specifically, the subpoena, arrest warrant, his medical records, and the pictures of his family's destroyed house—and his failure to provide additional corroborating evidence, such as affidavits from family or friends. Because of the IJ's concerns regarding this evidence (or lack thereof), the IJ concluded that Barry had failed to meet his burden of proof to demonstrate that he had a well-founded fear of future persecution.

Barry's sole argument on appeal is that the IJ erred in rejecting the supporting evidence that Barry provided. Specifically, he contends that the IJ never ruled that he was not credible, and thus should have credited Barry's testimony, relied on his supporting evidence, and found that Barry had satisfied his burden of proof. And indeed, as Barry notes, if an IJ fails to make an adverse credibility finding, an applicant's testimony has "a rebuttable presumption of credibility on appeal." 8 U.S.C. § 1158(b)(1)(B)(iii).

But this argument misreads the IJ's opinion. The IJ explained that Barry's testimony about his supporting evidence

> was vague and his explanation with respect to . . . how the documents that he submitted, specifically the hospital report, the summons, and the arrest warrant and the medical report, were obtained and it is the opinion of the Court he was *not credible* on those issues and did not provide a satisfactory explanation.

(Emphasis added.) Thus, contrary to Barry's contention, the IJ *did* make an adverse credibility finding regarding Barry's testimony about his supporting evidence. This credibility finding undercuts Barry's argument that we should credit his testimony regarding such evidence.

Furthermore, this adverse credibility finding was supported by substantial evidence. An applicant must present more than a "plausible" explanation "to overcome an adverse credibility determination. If the IJ's contrary interpretation is not unreasonable, it supports an adverse credibility finding." *Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005) (brackets, citation, and internal quotation marks omitted). Barry provided little detail about how he received the summons, arrest warrant, medical records, or photographs beyond explaining that someone at the RPG mailed them to him. He did testify that his father's friend managed to acquire his medical records for him but, as the IJ noted, Barry was unable to provide any proof of this beyond his own testimony.

According to Barry, the RPG sent the items without cover letters, and he did not keep the envelopes in which the items were mailed. Although an immigrant who has little experience with the American legal system might have reasonably discarded used envelopes, the RPG's failure to provide cover letters does raise red flags. And the IJ's skepticism as to how the RPG managed to acquire the summons and the arrest warrant (a concern that Barry was unable to address) appears

reasonable. In sum, the record does not compel us to reverse the IJ's factual determination that Barry's testimony about his supporting evidence was not credible. *See Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (explaining that a reversal of the BIA's factual determination is appropriate only where the evidence compels a contrary conclusion).

**D.     The IJ's determination on the burden of proof**

The remaining issue is whether the IJ's determination that Barry failed to meet his burden of proof is supported by substantial evidence. *See Yang Lin v. Holder*, 320 F. App'x 428, 434 (6th Cir. 2009) (reviewing an IJ's decision that an asylum applicant failed to meet his burden of proof under the substantial-evidence standard). Put another way, we must determine whether the evidence compels us to reverse the IJ's decision that Barry failed to carry the burden of proof that he suffered past persecution or that he has a well-founded fear of future persecution should he be returned to Guinea. In the present case, the evidence does not compel such a result.

The IJ's conclusion that Barry had failed to meet his burden of proof was based on two rulings. First, the IJ found that Barry's testimony about his supporting evidence was vague and unsatisfactory, causing the IJ to view this evidence with distrust. This finding caused Barry's case to rest on his own testimony, the affidavit from the RPG regarding his role in the party, the newspaper article mentioning his RPG membership and arrest, and the articles and reports that he provided on the political situation in Guinea. Second, the IJ determined that Barry's failure to provide reasonably available corroborating evidence undermined his case. Specifically, the IJ found that Barry could have obtained affidavits from his family, his friends, or the RPG.

The IJ's conclusion that Barry's testimony about his supporting evidence was not credible was, as discussed above, supported by substantial evidence. In regard to the IJ's second basis for his holding—Barry's failure to provide other corroborating evidence—the IJ's reasoning does not warrant reversal. "[W]here an alien's testimony is the only evidence available, it can suffice where [it] is believable, consistent, and sufficiently detailed . . . ." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (citation omitted). "However, . . . where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided." *Id.* (citation and internal quotation marks omitted).

Barry contended that he could not provide affidavits from his family or from his father's friend that would corroborate his testimony without putting their safety at risk. But the IJ noted that Barry had already received his medical records from his father's friend (by way of the RPG), and that Barry had testified that he was in contact with his mother. The IJ and the BIA therefore concluded that Barry could have received affidavits from these two individuals, meaning that corroborating evidence was reasonably available to Barry.

Although writing and signing an affidavit that accuses the existing government of unlawfully detaining and abusing a political dissident is presumably more risky than simply forwarding a legal document, the IJ's and the BIA's reasoning does not strike us as unreasonable. And we cannot reverse an IJ's decision regarding the availability of corroborating evidence "unless the court finds that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4), as amended by the REAL ID Act of 2005, Section 101(e)) (ellipsis omitted).

The IJ also explained that Barry had testified that RPG groups existed in both New York and Washington, D.C. He thus reasoned that Barry could have asked an RPG member from one of those cities to either testify on his behalf or to corroborate, in some manner, Barry's story. Again, this logic appears reasonable, and Barry offers no explanation for why he failed to provide such corroborating evidence. Barry is thus unable to refute the IJ's conclusion that he failed to provide reasonably available corroborating evidence. And we have repeatedly upheld the denials of asylum petitions where an IJ invoked the lack of corroborating evidence as a basis to find that a petitioner has not met his burden of proof. *See, e.g.*, *id.* at 975, 977 (denying asylum due to the absence of corroborating evidence, not because the applicant lacked credibility); *Dorosh*, 398 F.3d at 383 (same); *see also Shkabari v. Gonzales*, 427 F.3d 324, 331-32 (6th Cir. 2005) (denying asylum both because of the petitioner's lack of credibility and his lack of corroborating evidence).

We note, however, that both the IJ and the BIA failed to mention the newspaper article that Barry submitted in support of his application. As discussed above, this article reports that Barry is a member of the RPG, that he opposed the PUP's referendum, that he was arrested by the government, and that his father is a member of the RPG and was fired from his government job as a result. The article therefore serves as valuable corroborating evidence for several portions of Barry's testimony, although the allegations it corroborates do not rise to the level of past persecution. *See, e.g.*, *Mohammed v. Keisler*, 507 F.3d 369, 371-72 (6th Cir. 2007) (holding that an asylum applicant's allegations of being detained for three days, and being slapped and kicked once, did not rise to the level of persecution); *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995) (holding that a four-

to-six-hour detention of an asylum applicant by ethnic Fijians did not constitute past persecution even though the detention included physical abuse).

But the IJ's and the BIA's failure to address the newspaper article is understandable in light of the fact that Barry's counsel never mentioned it during the hearing before the IJ, never cited to it in his brief to the BIA, and failed to reference it in either of his briefs to this court. In fact, the only time that the article has been referred to at all on Barry's behalf was during oral argument by his counsel on appeal. Why his counsel chose not to highlight, or even mention, the article at an earlier point is rather puzzling.

In any event, despite its general usefulness to Barry's case, the existence of the newspaper article does not compel us to reverse the IJ's decision because it fails to address the key issue of alleged persecution. Specifically, the article mentions only that Barry was detained; it does not address how long he was detained or whether he was abused and beaten during his detention. *See Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) ("Persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." (brackets and citation omitted)). And these are the key facts that the IJ found that Barry had failed to establish, thus leading the IJ to find that Barry had not carried his burden of showing past persecution or a well-founded fear of future persecution.

Furthermore, although Barry could have argued that the IJ violated his due process rights by failing to address the newspaper article, *see Yacoub v. Holder*, 337 F. App'x 511, 516-17 (6th Cir. 2009) (addressing an asylum applicant's argument that an IJ violated his due process rights by failing to consider particular pieces of evidence); *Jiang v. Mukasey*, 286 F. App'x 286, 289 (6th Cir. 2008)

(same), he failed to raise this argument. This court lacks jurisdiction to review issues that have not been raised and administratively exhausted below. *See* INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). And our research has revealed no precedent where this court has reversed an IJ's decision for failing to discuss evidence that an asylum applicant did not argue to the IJ or the BIA.

In sum, Barry has not demonstrated that the evidence compels the conclusion that he met his burden of proof. *See Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (explaining that reversal of an IJ's decision is allowed only if the evidence presented "not only supports a contrary conclusion, but indeed *compels* it." (citation omitted) (emphasis in original)). We must therefore deny his petition for review of his asylum claim. Furthermore, because Barry's asylum claim fails, we need not consider Barry's remaining clams. These other claims—for withholding of removal and protection under the CAT—require an applicant to meet an even higher burden of proof than is needed to establish an asylum claim. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (withholding of removal); *Ramaj v. Gonzales*, 466 F.3d 520, 531-32 (6th Cir. 2006) (protection under the CAT).

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Barry's petition for review.

**HELENE N. WHITE, Circuit Judge,** dissenting. I respectfully dissent. I disagree with the majority's conclusion that the IJ made an adverse credibility finding regarding Barry's testimony as a whole. Further, because the IJ and the BIA faulted Barry for failing to provide sufficient corroborating evidence, I believe they committed error in not considering all of the corroborating evidence in the record. I would therefore remand for further consideration by the BIA.

I read the portion of the IJ's opinion that the majority quotes as finding that Barry was not credible as to his explanations for how he obtained certain corroborating evidence that the IJ was seeking, not that his testimony was not credible overall. The IJ held that Barry was "not credible *on those issues*"—a statement which refers back to Barry's explanation for how he obtained certain documents, which the IJ identifies earlier in the sentence. At the very least, the IJ's credibility statement is ambiguous. As a result, Barry is entitled to a presumption of credibility here. 8 U.S.C. § 1229a(c)(4)(C) ("[I]f no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal."); *see also Haider v. Holder,* 595 F.3d 276, 282 (6th Cir. 2010) ("[W]hen an IJ or the BIA expresses suspicion about an applicant's lack of credibility but the BIA fails to make an explicit adverse determination and instead denies relief on some other basis, we will assume that the applicant was credible in order to review the actual grounds for the ruling.").

As the majority notes, however, although credible testimony may be sufficient, an IJ may also require "reasonable . . . corroborating evidence." *Dorosh v. Ashcroft,* 398 F.3d 379, 382 (6th Cir. 2004). Some of the corroborating evidence the IJ sought is of questionable reasonableness. For instance, that the RPG did not provide cover letters with the mailings it sent to Barry does not raise

the "red flags" for me that it does for the majority.  Even assuming, arguendo, that whoever at the RPG offices was tasked with responding to a request for documents would also include a cover letter, it is not surprising that a member of an opposition party that is subject to political persecution would be hesitant to unnecessarily tie their name to the assistance of other opposition party members.

More troubling, however, is the IJ and the BIA's failure to consider all of the record evidence corroborating Barry's claim.  As the majority notes, neither the IJ nor the BIA discussed a purported newspaper article that mentions, *inter alia*, that Barry was arrested in Guinea for his political involvement.  The majority is correct that the article is valuable corroborating evidence for Barry's testimony.  Moreover, the IJ and the BIA's failure to consider the article is particularly troubling because both the IJ and the BIA specifically noted in their opinions that part of Barry's failure to meet his burden of proof was that he insufficiently corroborated his claim that he was detained.

Further, I disagree with the majority's holding that the allegations corroborated by the newspaper article do not rise to the level of past persecution.  The article corroborates Barry's detention, and therefore corroborates treatment that could establish past persecution.  *See, e.g., Hussein v. Holder,* No. 08-3860, 2010 WL 2181797, at *5 (6th Cir. June 1, 2010) (unpublished decision) ("Types of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture."  (quoting *Gilaj v. Gonzales,* 408 F.3d 275, 285 (6th Cir. 2005)); *Scavenger v. Mukasey,* 313 F. App'x 816, 818 (6th Cir. 2008) (To establish persecution, applicant must show that they faced a "deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life."); *cf. Mikhailevitch v.*

-15-

*I.N.S.,* 146 F.3d 384, 390 (6th Cir. 1998) ("'[P]ersecution' within the meaning of 8 U.S.C. 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty."). The two cases the majority cites for the proposition that "the allegations [the article] corroborates do not rise to the level of past persecution" both addressed alleged detentions that took place over a far shorter period of time, and with less accompanying physical abuse, than what Barry alleges here. In *Mohammed v. Keisler,* 507 F.3d 369, 371-72 (6th Cir. 2007), the petitioner was allegedly detained for three days and was "slapped and kicked once." In *Prasad v. I.N.S.,* 47 F.3d 336, 339 (9th Cir. 1995), the petitioner was allegedly held for six hours, and hit and kicked once. Barry, on the other hand, alleges that he was detained for three months, and repeatedly beaten.

In the context of an opinion that denies asylum based on a failure to corroborate, I believe the IJ and BIA's failure to address record evidence that corroborates a claim of persecution requires a remand for reconsideration, and would so order. *See Alcius v. Holder,* No. 08-4447, 2010 WL 1063839, at *6 (6th Cir. March 23, 2010) ("This is not to say that the IJ and BIA got it wrong, but their failure to grapple with the evidence . . . suggests that the decision must be sent back for a more complete analysis." (internal brackets omitted) (quoting *Ileana v. I.N.S.*, 106 F. App'x 349, 357 (6th Cir. 2004)).