RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

VALENTIA SERGEIYEVNA KHOZHAYNOVA;
ALEXANDER KHOZHAYNOVA,

　　　　　　　　　　*Petitioners,*

　　*v.*

ERIC H. HOLDER, JR. Attorney General,

　　　　　　　　　　*Respondent.*

No. 09-4237

On Appeal from the Board of Immigration Appeals.
Nos. A098221247 (Detroit); A098221248 (Detroit).

Argued: March 9, 2011

Decided and Filed: April 20, 2011[*]

Before: KEITH, MERRITT, and MARTIN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Maris J. Liss, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Monica G. Antoun, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** George P. Mann, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Monica G. Antoun, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————————

## OPINION
———————————

　　KEITH, Circuit Judge. Valentia Sergeiyevna Khozhaynova ("Khozhaynova") and her son Alexander Khozhaynova ("Alexander") seek review of the final order of the

---

[*] This decision was originally issued as an "unpublished decision" filed on April 20, 2011. On May 19, 2011, the court designated the opinion as one recommended for full-text publication.

Board of Immigration Appeals, affirming the immigration judge's denial of their petitions for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  For the reasons set forth below, we **DISMISS** the Khozhaynovas petition for review of the denial of their application for asylum.  We **DENY** the Khozhaynovas petition for review and **AFFIRM** the Board's decision in all other respects.

## I. BACKGROUND

Khozhaynova, the lead petitioner, and Alexander are natives and citizens of Russia.  Khozhaynova first entered the United States on February 26, 1999 with her husband to find a doctor for Alexander, who suffers from phenylketonuria.[1]  Alexander stayed in Russia.  Khozhaynova returned to Russia after a year.  She did not apply for asylum.  Khozhaynova again entered the United States on November 25, 2002, as a visitor with permission to remain for six months.  Alexander was admitted to the United States on February 7, 2004, as a visitor with permission to stay for three months.  Both overstayed their visas.  The Department of Homeland Security initiated removal proceedings on July 19, 2004, and Khozhaynova applied for asylum, withholding of removal and protection under the CAT on July 25, 2006.

Khozhaynova seeks asylum and withholding from removal for fear of persecution on account of her imputed political opinion as a business owner who "advocat[es] for a free market system" and refuses to submit to mafia payments. In 1994, Khozhaynova and her husband opened a wholesale grocery store in Russia.  Not long after the store opened, Khozhaynova and her husband began receiving threats from people she believed were in the mafia, who demanded payment for protection.  In February 1995, Khozhaynova's husband was robbed and beaten.  Khozhaynova received more threats from individuals not associated with the government.  She further claims that between 1996 and 1998, she was attacked and beaten twice on account of her ownership of the

---

[1]This disease prevents Alexander's body from properly absorbing proteins.  The disease also brought about developmental problems for Alexander, including mental retardation.  He requires constant care and supervision.

store—once at her store where the assailants robbed and raped her, and once in her apartment building with her husband where her jewelry was stolen. Additionally, her truck was burned, and her store was burned by unidentified members of the mafia. After all these incidents, Khozhaynova traveled to the United States with her husband in February 1999. She stayed for a year, looking for doctors to treat her son. She did not apply for asylum, but rather returned to the Russia without her husband and attempted to reopen another store. Khozhaynova alleges that the same people who harassed her in 1998 found her and threatened her again. Allegedly, she approached the police who told her they'd already put one of her attackers behind bars, "and that [was] enough." Moreover, the police told her that if she complained about the situation further, they would take her son hostage. She ultimately had to close the store because of tax and sanitation issues, along with the threats. Khozhaynova then left Russia without her son, and entered the United States on November 25, 2002. Alexander joined two years later. Khozhaynova now argues that she continues to fear returning to Russia. To corroborate her statements asserting fear, Khozhaynova provides evidence of her estranged husband's parents home being robbed in 2006 allegedly because she and her husband failed to pay the mafia for protection.

Following a December 20, 2007 removal hearing, the immigration judge found Khozhaynova's asylum application barred as untimely. Though she alleged she filed more than three years after arriving in the United States because Alexander was very sick and needed her constant care, the immigration judge found that Alexander did not come to the United States until more than a year after her arrival, thus the excuse did not make sense and did not amount to an extraordinary circumstance. Next, the immigration judge held that even if her application was timely, she failed to carry her burden of proof as to asylum. The immigration judge made an adverse credibility determination based upon inconsistencies between Khozhaynova's amended application and her testimony at the removal hearing. Specifically, the immigration judge pointed to discrepancies between the time and location of the beating in the apartment building, discrepancies concerning the details surrounding her alleged rape, and the lack of reasonably accessible corroborating statements from her sister and in-laws to authenticate the

documentation she provided with her asylum application. Alternatively, the immigration judge held that even if she were credible, Khozhaynova was not entitled to relief from removal because she failed to show that she would be persecuted on account of a protected ground. Accordingly, the immigration judge denied withholding of removal or relief under the CAT and ordered Khozhaynova and Alexander removed to Russia.

On September 9, 2009, the Board affirmed the immigration judge in-part, but sustained Khozhaynova's appeal in-part.[2] The Board affirmed the immigration judge's rejection of Khozhaynova's asylum application as untimely. The Board affirmed the immigration judge's adverse credibility determination based upon inconsistencies surrounding the rape, the attacks, the timing of the store burning down, and the lack of corroborating evidence. Finally, the Board affirmed the immigration judge's refusal to grant withholding of removal or protection under the CAT because Khozhaynova failed to demonstrate the threat persecution on account of an enumerated ground. Accordingly, Khozhaynova and Alexander now timely appeal.

## II. ANALYSIS

### A. Standard of Review

Because the Board issued an independent decision, we review the Board's determination including any parts of the immigration judge's reasoning referenced by the Board. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review "any legal conclusions de novo and factual findings and credibility determinations for substantial evidence." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citation omitted). Under the deferential substantial evidence standard, factual findings of the Board, including credibility determinations, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4); *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010).

---

[2]The immigration judge found that Khozhaynova's application was frivolous, and imposed sanctions. However, the Board sustained Khozhaynova's appeal from this determination, and the Attorney General does not appeal from it. Thus, it is outside the scope of our review.

**B. Untimely Asylum Application**

To be eligible for asylum, an alien must demonstrate by clear and convincing evidence that he or she filed the application for asylum within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). An exception to this requirement can be made if the applicant demonstrates either the existence of "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application" within the one-year time period. *Id.* § 1158(a)(2)(D). However, this Court's review of timeliness is statutorily limited. *Id.* § 1158(a)(3). Under the REAL ID Act of 2005, we have jurisdiction to "review asylum applications denied for untimeliness only when the appeal seeks review of constitutional claims or matters of statutory construction, not when the question is discretionary or factual." *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007) (citing *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)) (internal quotation marks omitted).

Here, Khozhaynova concedes that she filed her application more than one year after lawfully entering the United States. Nevertheless, she claims that Alexander's medical condition and her ignorance of the availability of asylum were extraordinary circumstances that prevented her from timely applying for asylum. Because she could not be away from Alexander for long periods of time and she was constantly looking for doctors to care for him, she argues that her failure to file the application on time should be excused.

However, Khozhaynova's claim regarding extraordinary circumstances rests on challenging the immigration judge's factual determinations. The immigration judge specifically found that Khozhaynova entered the United States almost two years before Alexander arrived in the United States. As he explained, Khozhaynova "was not responsible for her son's daily care during her first year in the United States, and thus her son's daily care or inability to secure medical treatment for him in the United States in no way prevented her from filing for asylum." He further held that her failure to apply for asylum during this period was ultimately based upon her unfamiliarity with our

laws, which does not excuse untimeliness. Upon review, we see no bias on the part of the immigration judge in making these findings. Because Khozhaynova's claim is factual in nature, we lack the jurisdiction to address it.

Khozhaynova tries to avoid the jurisdictional bar by asserting that her claim presents a "mixed question of fact and law." To support this assertion, Khozhaynova relies upon *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) ("*Ramadan II*"). In *Ramadan II*, the Ninth Circuit, on a petition for rehearing, overruled-in-part its prior decision in *Ramadan v. Gonzales*, 427 F.3d 1218 (9th Cir. 2005) ("*Ramadan I*"), that Amendment 106 of the REAL ID Act restores court of appeals' jurisdiction over "constitutional claims or questions of law," and expanded its jurisdiction to also consider "questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law." *Ramadan II*, 479 F.3d at 650. In making this decision, the Ninth Circuit joined the Second Circuit in determining that statutory language grants the circuit courts jurisdiction to consider these issues. *See Chen v. U.S. Dep't of Justice*, 471 F.3d 315 (2d Cir. 2006) ("*Chen II*"), *vacating in part on petition for rehearing*, *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144 (2d Cir. 2006) ("*Chen I*").

Our circuit first considered the impact of Amendment 106 on the Real ID Act of 2005 in *Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006). There, we specifically relied upon the persuasiveness of *Chen I* to hold that Amendment 106 only permits judicial review of purely legal questions, such as constitutional and statutory construction questions. *Almuhtaseb*, 453 F.3d at 748 (citing *Chen I*, 434 F.3d at 153). Discussing both the statutory text and the legislative history, we agreed with the Second Circuit's initial conclusion that "questions of law" as stated in 8 U.S.C. § 1252(a)(2)(D) means questions regarding statutory construction. *Id*. at 747. However, we also noted that whether we have jurisdiction to review an asylum application based on untimeliness presents a "predominately factual" question that requires a "particularized inquiry into the nature of a petitioner's claim." *Id*. at 749 n.3.

Today, Khozhaynova essentially asks this panel to reconsider our decision in *Almuhtaseb*, though this court did not grant a motion for rehearing to that case. She argues that the Ninth and Second Circuits were correct in reconsidering their interpretation of Amendment 106, and that we should adopt their revised holdings. Khozhaynova points to no intervening Supreme Court case clarifying what effect Amendment 106 should have, nor is this panel aware of one. Therefore, because "[i]t is a well-established rule of this circuit that one panel cannot overrule the holding of another panel, absent an intervening inconsistent opinion from the U.S. Supreme Court," we decline to reconsider our initial statutory interpretation of Amendment 106. *Susan Lewis v. Humboldt Acquisition Corp., Inc.*, No. 09-6381, 2011 WL 906433, at *1 (6th Cir. Mar. 17, 2011). We continue to maintain a more narrow interpretation of our jurisdiction to review untimely asylum applications, and limit review to constitutional or statutory interpretation claims. Because Khozhaynova's argument that her concern about Alexander's medical condition impeded her discovery of the availability of asylum and submission of a timely asylum application is predominately factual, we dismiss Khozhaynova's petition to review for lack of jurisdiction.

## C. Withholding of Removal

Khozhaynova also seeks review of the Board's denial of her application for withholding of removal under the Immigration and Nationality Act. To qualify for withholding of removal, Khozhaynova must show that there is a clear probability that she would be subject to persecution on the basis of her race, religion, nationality, membership in a particular social group, or political opinion if she returned to Russia. 8 U.S.C. § 1231(b)(3)(A); *Vincent v. Holder*, 632 F.3d 351, 354 (6th Cir. 2011). If she can establish past persecution, she is entitled to a rebuttable presumption that her life or freedom would be threatened if she returns to Russia. 8 C.F.R. § 1208.16(b)(1)(i). If Khozhaynova's fear of future threat to life or freedom is unrelated to past persecution, then she bears the burden of demonstrating that it is "more likely than not" that she will be persecuted on the basis of one of the five protected grounds if she returns to Russia. *Id*. at § 1208.16(b)(1), (2).

Khozhaynova argues both that she suffered from past persecution in Russia on account of her imputed political opinion as a member of a particular social group, and that she would more likely than not suffer from persecution if she were returned to Russia on account of the same protected grounds. The immigration judge and the Board rejected these arguments. The basis of this Court's review is the finding that Khozhaynova was not credible, and, even if she were credible, she failed to present a valid claim of fear of persecution based upon her status as a business owner refusing to make extortion payments. We will address each ground in turn.

1. *Adverse Credibility Determination*

Credibility determinations are made based upon the "totality of the circumstances," based upon the following factors:

> [T]he demeanor, candor, or responsiveness of the applicant [], the inherent plausibility of the applicant's [] account, the consistency between the applicant's [] written or oral statements . . . , the internal consistency of each statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). We review the grounds relied upon by the immigration judge, and adopted by the Board, to determine whether the adverse credibility determination was supported by substantial evidence, or whether a reasonable adjudicator would be compelled to conclude to the contrary. *Zhao*, 569 F.3d at 247-48.

There is substantial evidence to support the immigration judge's finding that Khozhaynova was not credible about her past persecution or fear of future persecution. For example, Khozhaynova amended her asylum application prior to submission with the aid of a Russian-speaking attorney to indicate that every time she was beaten or robbed, she was raped. She later changed this statement during her testimony, indicating that she was only raped once but attackers attempted to rape her by making her take off all her clothes and molesting her during two other attacks. Khozhaynova only pointed

to two instances where she was attacked, once at her store alone when she was robbed and raped by two men,[3] and once with her husband in the stairwell of their apartment building when her jewelry was stolen. She never testified about an instance of attempted rape. And while she explains that she never filed a complaint about the attempted rape because she did not want her husband to know, she did not indicate that a rape or an attempted rape occurred during the attack she suffered in the presence of her husband at the apartment building. Thus her amended assertion on her application and her testimony were inconsistent, and the record supports a finding that her statement concerning the attempted rapes lacked credibility.

Inconsistencies in Khozhaynova's testimony concerning the details of the attack in the apartment building also support an adverse credibility determination. Khozhaynova stated that she and her husband were robbed and beaten at her apartment building in either November 1997 or 1998. There is a discrepancy between her written application, which states that the incident occurred in the lobby of the building, and her oral testimony before the immigration judge, at which she stated that the incident occurred on a landing of a stairwell in the apartment building. Significantly, between 1997 and 1998, Khozhaynova's store was burned. However, her testimony vacilates between whether the attack at the apartment building happened before or after the store burned down. While it may be conceivable that Khozhaynova confused the meaning of the words lobby and stairwell in explaining the location of the attack, it is less likely that she would not be able to recall when such an attack occurred in relation to the burning of her store. Thus, the record supports the adverse credibility determination on this ground as well.

Additionally, the Board found that Khozhaynova's failure to provide corroborating evidence where available bolstered the immigration judge's adverse

---

[3]The Board noted that Khozhaynova's application stated that she was attacked by three criminals, but then during the hearing she specifically stated that she was raped and robbed by two individuals. It was not until the immigration judge inquired about the inconsistency that she explained that "the third one was on [sic] the distance . . . He was observing." While we are not troubled by this inconsistency, the Board and the immigration judge's finding to the contrary is supported by the record. *Zhao*, 569 F.3d at 248 (citing *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008).

credibility determination.  The immigration judge stated that Khozhaynova "submitted significant documentation in an attempt to corroborate her claim, but her documentation is entitled to little or no weight" because the documentation was not authenticated and she failed to provide letters from her sister and in-laws explaining how the documents were obtained.  The Board affirmed this finding, stating that "she did not give a reasonable explanation as to why she did not [provide letters from her sister or in-laws]."  Khozhaynova argues that the Board erred in suggesting that she needed to provide additional corroborating evidence from her family because they lacked firsthand knowledge of the incidents supporting her application and no one asked her why they failed to provide more information.  However, Khozhaynova misconstrues the purpose for which the immigration judge wanted information from her family.  Rather than requiring additional statements from the family to bolster her statements concerning the incidents, the immigration judge wanted statements concerning the credibility of the documents themselves.  Khozhaynova focuses upon her family's lack of firsthand knowledge concerning the attacks, which may be true, but fails to make any assertions concerning their firsthand knowledge in obtaining the other documentation.  And while the Board, citing to *Pilica v. Ashcroft*, 388 F.3d 941, 945 (6th Cir. 2004), notes that lack of corroborating evidence can support an adverse credibility finding, it makes no suggestion that the type of evidence that the immigration judge was suggesting concerned the details of the alleged attacks.  Accordingly, we find that it was reasonable for the immigration judge to ask for a statement concerning the manner in which the documents were collected.  Moreover, as the immigration judge found that Khozhaynova's testimony was not credible, he was entitled to doubt the authenticity of the supporting documents.  *Barry v. Holder*, 392 F. App'x 418, 422-23 (6th Cir. 2010) (finding substantial evidence supported an immigration judge's skepticism of unauthenticated  documents where the immigration judge made an adverse credibility determination to the applicant submitting the documents).  In total, the record supports the immigration judge's adverse credibility determination.

2. *Statutory Insufficiency*

As an alternative ground for denying Khozhaynova's petition for withholding of removal, the immigration judge and the Board determined that she failed to demonstrate that she falls under one of the five protected grounds as required by 8 U.S.C. § 1158(b)(1)(A). As stated above, Khozhaynova must show past persecution or a well founded fear of future persecution "on account of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Khozhaynova argues that she fears persecution based upon her imputed political opinion as a member of a particular social group of business owners who refuses to pay for protection from the mafia under a free enterprise system. To support this, she indicates that many, if not all, of the attacks she suffered were because the individuals demanded money or valuable items. She points to her attack in the stairwell of her apartment, where her jewelry was taken. She points to the rape at her store, which she alleges occurred because she refused to pay extortion demands from the mafia. She even points to the burglary of her father-in-law's home in 2006, where items were allegedly stolen from their home because Khozhaynova and her husband still refused to pay extortion demands. While these events are unfortunate, and may have occurred because of her status as a business owner, they are insufficient to establish persecution on the basis of either a protected social group or her political opinion.

As we previously held in *Lugovyj v. Holder*, "mere defiance of unidentified thugs' extortion demands" does not render a petitioner status as a member of a protected social group. 353 F. App'x 8, 10 (6th Cir. 2009). "A social group is a group of persons all of whom share a common, immutable . . . [and] fundamental characteristic that either cannot be changed or should not be required to be changed because it is fundamental to the members' individual identities or consciences." *Id*. (quoting *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 546-47 (6th Cir. 2003)) (internal quotation marks omitted). To become a social group for the purposes of this statute, individuals "must share a narrowing characteristic other than their risk of being persecuted." *Id*. (internal citation

omitted). Repeatedly, this court has held that one's status as a business owner who refuses to pay extortion demands does not constitute a protected social group. *See id.* (finding that petitioner's status as a business owner refusing to pay extortion demands did not satisfy burden to establish himself as part of a protected social group under the INA); *Jelkovski v. Ashcroft*, 103 F. App'x 578, 579 (6th Cir. 2004) (finding that targeting of shop owners by criminals for extortion purposes did not constitute persecution on account of membership in a particular social group). Accordingly, Khozhaynova's claim is insufficient to establish persecution on account of her membership in a protected social group.

Likewise, Khozhaynova's mere refusal to pay extortion demands does not constitute a political opinion in this instance. In order to prove persecution on account of a political belief, she must show, through direct or circumstantial evidence, that she was persecuted *on account of* or *because of* her political opinion. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). She must show that "she acted based on a political opinion and that her actions were interpreted as such by her alleged persecutors." *Bu v. Gonzales*, 490 F.3d 424, 430 (6th Cir. 2007) (quoting *Marku*, 380 F.3d at 987) (internal quotation marks omitted). Here, the record fails to sufficiently connect her alleged persecution to her political opinion. Rather, the record supports the Board's conclusion that "there is no evidence that the alleged perpetrators knew or cared what [Khozhaynova's] political opinion might be or if she was part of a particular group." Khozhaynova failed to connect the attacks on her and her husband, the robberies, the fire or the threat to kidnap her son, to anything more than the financial demands of criminal corruption.[4] In each of her alleged attacks, she was robbed of valuable items. Thus, it

---

[4]Khozhaynova also states that she suffered gender persecution because she was raped. In essence, though, she argues that the rape resulted from an expression of her political opinion. According to Khozhaynova, the rape indicates her imputed political opinion that she is "opposed to the threats, violence and rape inflicted upon her." Putting aside the circularity of Khozhaynova's argument, whether an applicant was persecuted on account of their political opinion turns on the persecutor's motive, and in this instance Khozhaynova concedes that there was "no overt indication that her persecutors cared what her political opinion might have been." Additionally, Khozhaynova argues that her complaints to the authorities about her rape demonstrate "her political opinion as opposition to government-sanctioned or government acquiesced persecution." However, she conceded during her testimony before the immigration judge that she 1) was not raped by a government official, and 2) did not tell anyone, not even her family, about the rape until she appeared before the immigration judge in 2007. Accordingly, the incident only supports a finding of criminal corruption and demonstrates a random act of violence, beyond the reach of

is just as likely, if not more likely, that assailants targeted Khozhaynova because of her perceived wealth as a store owner. *See Pablo-Sanchez*, 600 F.3d at 595 (denying relief or protection for political opinion where petitioner was attacked twice after leaving the bank by unidentified assailants). She provides no evidence that she is politically active in any other way than by running a business, nor does she establish that her persecutors interpreted her refusal to pay extortion demands as an articulation of her political opinion. And while she argues that the government refused to control her persecutors, Khozhaynova testified before the immigration judge that the Russian police incarcerated one of her attackers, but could not prosecute any others for lack of evidence. Whether their attitude was "flippant" or not, it appears the Russian police did what they could to protect her given the limited information Khozhaynova provided about the attacks. Thus, substantial evidence supports the Board's determination that Khozhaynova failed to demonstrate that she was persecuted on account of a statutorily protected ground.[5] Accordingly, the Board's denial of withholding of removal is affirmed.

## D. Protection Under the CAT

Finally, Khozhaynova seeks review of the denial of protection under the CAT. To qualify for protection, Khozhaynova bears the burden of demonstrating that she would more likely than not suffer torture if removed to Russia. 8 C.F.R. § 1208.16(c)(2). Khozhaynova rests her CAT claim on the same grounds as her withholding of removal claim, namely that she fears torture because of her status as a business owner who refuses to pay extortion money to the mafia. However, "credibility determinations regarding applications for withholding under the Act and the CAT are reviewed under the same standard." *Zhao*, 569 F.3d at 249. Because Khozhaynova failed to satisfy the threshold showing of credibility for withholding of removal, she

---

the statutorily enumerated protected grounds.

[5] Prior to oral arguments, Khozhaynova submitted an additional citation, *Vincent v. Holder*, 632 F.3d 351, 355-56 (6th Cir. 2011) (finding past persecution where rebels who targeted petitioner for his well known political opinion burned down his home), and argued that she qualifies for withholding of removal and protection under the CAT because she suffered economic deprivation as a form of past persecution. However, because she fails to connect the burning of her store to her political opinion, and substantial evidence supports a finding that it was an act of criminal corruption, this argument is unpersuasive.

likewise failed to demonstrate entitlement to relief under the CAT. *See id.* Accordingly, we deny review of Khozhaynova's claim for relief under the CAT as well.

### III.  CONCLUSION

For the foregoing reasons, we **DISMISS** for lack of jurisdiction the petition for review of the Board's denial of asylum for untimeliness.  We **DENY** the petition for review of the Khozhaynovas petition for withholding of removal and protection under the CAT, and **AFFIRM** the decision of the Board.