NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0154n.06

Case No. 13-3444

**FILED**
Feb 25, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| YANYUN NI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; SILER and CLAY, Circuit Judges.

**SILER**, Circuit Judge. Yanyun Ni, a native and citizen of China, petitions this court to review the decision of the Board of Immigration Appeals ("BIA") affirming the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the following reasons, we **DENY** review of the BIA's decision.

**I.**

Ni testified that she was born in Fuzhou City, China and that her husband, children and parents continue to reside there. In 2002, Ni married Tianpeng Wang, and together the couple have four children. After her first child was born, Ni claims she was forced by Chinese family planning officials to have an intrauterine device inserted and was later fined for having it removed by a private doctor. She also asserts that she became a Christian in 2009 and was later

arrested and detained for twelve days by Chinese authorities for attending an underground church. In October 2009, Ni says she became pregnant for a fifth time, but was forcibly aborted by Chinese population control authorities.

In April 2010, Ni traveled to the United States on a B-1 nonimmigrant visa, with authorization to remain for a temporary period. Within a few weeks of arriving, she filed with the Department of Homeland Security ("DHS") an application for asylum, withholding of removal and protection under CAT. In her application, she sought protection from alleged persecution by Chinese population control officials and the ability to practice her Christian faith freely. The asylum officer found Ni's testimony contained multiple inconsistencies and was not credible: "[a]pplicant's inability to talk about certain events out of order suggests that she was reciting language from memory rather than testifying about events that actually happened to her." DHS denied the application and referred it to the Immigration Judge ("IJ") while placing Ni into removal proceedings.

During the immigration court hearing, the IJ also noted multiple inconsistencies in Ni's testimony and ultimately found she lacked credibility. The IJ specifically found it troubling that Ni reported to be hiding from government officials at times, yet at the same time paid fines assessed by family planning officials. Indeed, the amount of the fines and her family's ability to pay varied throughout Ni's testimony. Additionally, the IJ noted that Ni offered evasive and nonresponsive answers when asked about her travel documents and visits to the U.S. consulate in Guangzhou. Finally, the IJ found it difficult to believe that Ni could have left China twice[1] while, by her own testimony, she was evading family planning officials and being watched by

---

[1] Ni traveled to the U.S. in March 2010, but returned to China after a few days without filing for asylum. A few weeks later, in April 2010, she traveled to the U.S. for the final time before filing for asylum.

police following her arrest at an underground church. In addition to finding her not credible, the IJ indicated that Ni failed to provide corroborating evidence that he would have expected, e.g., statements from her husband and mother-in-law, who had first-hand knowledge about many of Ni's claims.

The BIA found the IJ's credibility determination of Ni was not clearly erroneous because, in accordance with 8 U.S.C. § 1158(b)(1)(B)(iii), it was based on Ni's inconsistent and nonresponsive answers in the context of the totality of the circumstances. Furthermore, the BIA upheld the IJ's determination that Ni had not sufficiently corroborated her testimony. Finally, the BIA agreed with the IJ that Ni's claims regarding potential future persecution due to her practice of Christianity were too speculative to satisfy the objective component required for a well-founded fear determination.

## II.

"Where, as here, the BIA reviewed the IJ's decision *de novo* and issued its own separate opinion, we review the BIA's opinion as the final agency determination." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). Moreover, to the extent the BIA adopts the IJ's reasoning in its opinion, we review that analysis. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

Legal conclusions are reviewed *de novo*, while factual findings and credibility determinations are reviewable under the substantial-evidence standard. *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011). Under the substantial-evidence standard, factual findings and credibility determinations "are conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary." *Id.* (emphasis added).

**III.**

**A. Credibility**

An applicant for asylum has met her burden, "if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee."[2] U.S.C. § 1158(b)(1)(B)(ii). Substantial evidence in the record, though, supports the BIA's affirmance of the IJ's finding that Ni's testimony lacked credibility.

In responding to questions involving several material issues, Ni repeatedly provided inconsistent answers. For example, she gave substantially different answers about the total amount of the fines that had been assessed by Chinese population control officials. She also gave varying responses as to whether she and her family were able to pay those fines and whether the fines, in fact, had been paid.

Beyond just these inconsistent answers, the IJ found that Ni's demeanor and responsiveness damaged her credibility. On multiple occasions, the IJ had to warn her to answer the question she was asked, even when it was her own attorney conducting the examination. Indeed, the IJ went the extra mile in repeatedly asking Ni if she understood the translation in order to confirm that was not the cause of the difficulty.

Finally, the IJ noted that his adverse credibility determination with respect to Ni was partially based on her having traveled to the United States twice under her own passport in the

---

[2] The Immigration and Nationality Act defines a "refugee" as "a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)).

spring of 2010. The IJ found this travel implausible if, as Ni claims, she was arrested and detained a mere nine months before for attending a house church and was still purportedly being pursued by family planning officials. The BIA affirmed this finding, noting that DHS had provided evidence indicating that the name of an individual detained at an underground church meeting in China would likely be entered into a government security database.

The BIA reviewed the IJ's decision that Ni lacked credibility for error and found none. A reasonable adjudicator would not be *compelled* to conclude differently.

**B. Corroboration**

Even if an asylum applicant's testimony has been found credible, an IJ may still require corroborative evidence from the applicant unless he or she cannot reasonably obtain it. *See Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010); *see also* 8 U.S.C. § 1158(b)(1)(B)(ii). In this case, the IJ indicated he would have expected a statement from Ni's husband, who allegedly was forced to undergo a vasectomy and who is in regular contact with Ni by telephone. Also, the IJ would have expected a statement from Ni's mother-in-law, who interacted with the family planning officials looking for Ni and allegedly paid some of the various fines that had been assessed against the family.

The BIA affirmed the lack of corroboration finding, citing *Lin v. Holder*, to support its conclusion that the IJ's expectation of statements from Ni's husband and mother-in-law was reasonable. 565 F.3d 971, 977–78 (6th Cir. 2009).

In her brief to this court, Ni does not address the substance of the BIA's findings with respect to corroboration. Instead, she simply argues that since the IJ should have found her credible, there is no need for corroboration. The government argues this response waives Ni's

argument about corroboration and, furthermore, that her failure to address the substance is fatal to her petition since corroboration can be required even when an applicant is deemed credible.

Even if we assume Ni's argument is not waived, the IJ's expectation about the availability of corroboration in this case is reasonable. In her testimony, Ni said she speaks often with her husband in China and also remains in contact with her mother-in-law, with whom her husband and children live. Statements from either or both of these individuals could have substantiated many of Ni's claims, yet no explanation was offered as to why they were unavailable to provide evidence.

## C. Future Persecution

Ni asserts that it is more likely than not that she will be persecuted if she returns to China. Her basis for this claim stems primarily from her continued desire to practice Christianity. Although the BIA assumed for the sake of argument that Ni had established herself as a practicing Christian, it nevertheless found her claims too speculative to prevail since objective evidence indicates that the Chinese government's tolerance of unsanctioned Christian groups varies. In particular, the BIA cited the U.S. State Department's profile on conditions in China which noted that "[u]nregistered or unsanctioned religious and spiritual groups – including Protestant groups, [and] the 'underground' Catholic church … – experience differing degrees [of] official interference and harassment, with the degree of restriction varying significantly from region to region." Moreover, as recently as 2009, the State Department found that despite continued efforts by the Chinese government to regulate religious groups, the "freedom to participate in religious activities continued to increase in many areas." U.S. State Dept. Human Rights Report: China (2009). Finally, the BIA noted there was no evidence in the record that Chinese authorities were aware of Ni's practice of Christianity in the United States.

The law requires more than mere assertions about potential future dangers; "the fear of future persecution must be based on reasonably specific information showing a real threat to *individual* persecution." *Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012) (emphasis added). The BIA's conclusion that Ni has not carried her burden to establish a well-founded fear of future persecution is supported by substantial evidence.

## D.  Withholding of Removal & Protection under CAT

Ni's petition for withholding of removal fails for the same reasons as her asylum claim. "[A]n applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Urbina-Mejir*, 597 F.3d at 365 (internal quotation marks omitted).  To qualify for withholding of removal, an applicant must demonstrate it is more likely than not that, if removed to a designated country, her "life or freedom would be threatened" on account of a protected ground.  8 U.S.C. § 1231(b)(3)(A).  Thus, an applicant who fails to establish her eligibility for asylum necessarily fails to establish her eligibility for withholding of removal.  *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006) (citing *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).  Here, since Ni has not established she is eligible for asylum, she likewise cannot show eligibility for withholding of removal.

Ni's claim for protection under CAT also fails.  The BIA affirmed the IJ's adverse credibility determination and Ni's claims are based on the same circumstances alleged in her asylum application.  Thus, for the reasons given above, there is substantial evidence supporting the BIA's determination that Ni has not shown it is more likely than not that she will be tortured upon returning to China. *See Ben Hamida v. Gonzales*, 478 F.3d 734, 741–42 (6th Cir. 2007).

## IV.

Petition for review of the BIA's decision is **DENIED**.