NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0436n.06

No. 16-4123

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 25, 2017
DEBORAH S. HUNT, Clerk

LIDIA DIAZ-GONZALES and JANNETH )
SANCHEZ-DIAZ, )
 )
      Petitioners, )  ON PETITION FOR REVIEW
 )  FROM THE UNITED STATES
v. )  BOARD OF IMMIGRATION
 )  APPEALS
JEFFERSON B. SESSIONS III, U.S. Attorney )
General, )
 )
      Respondent. )

BEFORE: ROGERS, COOK, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Lidia Diaz-Gonzales and her minor daughter Janneth Sanchez-Diaz, natives and citizens of Honduras, entered the United States without inspection in March 2015. In March 2016, an immigration judge ordered that they be removed from the country after finding that Diaz-Gonzales had not met her burden of establishing past persecution or a well-founded fear of future persecution based on membership in a particular social group. The Board of Immigration Appeals (BIA) dismissed their appeal, and Diaz-Gonzales and Sanchez-Diaz now petition this court for review. For the reasons set forth below, we **dismiss** the petition for review.

## I.    BACKGROUND

Diaz-Gonzales, her husband, and two daughters—including Sanchez-Diaz—lived in El Negrito in the Yoro district of Honduras. The family ran small businesses out of their home, including a store that sold groceries, medicine, and a limited menu of prepared foods. In 2008,

Diaz-Gonzales started having medical issues and was ultimately diagnosed with human immunodeficiency virus (HIV). Diaz-Gonzales received treatment for her HIV, but experienced severe negative side effects from the treatment. She also faced discrimination in the community because of her diagnosis and believed that business at the store declined as a result, especially with respect to prepared foods that customers regarded as "contaminated." Due to the combination of decreased demand for prepared foods and Diaz-Gonzales's health challenges, the family stopped selling prepared foods.

The family experienced other troubles as well. Diaz-Gonzales, her husband, and Sanchez-Diaz were at their home-based store in February 2011 when five armed persons entered and threatened the family and customers who were present. The robbers took 30,000 Honduran lempiras (worth about $1,400 in U.S. Dollars). The incident was reported to the police who declined to conduct an investigation.

In January 2013, two armed men confronted Diaz-Gonzales when she was alone at the store and demanded a monthly extortion fee of 20,000 lempiras per month. The men warned Diaz-Gonzales that they would kill her and rape her daughters if she told anyone, including her husband or the police, about the extortion. Diaz-Gonzales feared for her safety as well as that of her family, so she followed the extortionists' commands by making monthly payments and keeping quiet. To keep up with the payments, Diaz-Gonzales had to procure loans from the bank—co-signed by her brother so her husband would not find out. The extortion ended in August 2014 when one of the extortionists was killed. Out of fear, Diaz-Gonzales never reported the extortion scheme to the police.

In December 2014, two armed men claiming to be members of the Mara 18 gang—a feared gang with a substantial presence in the nearby major city of San Pedro Sula—came to the

store and demanded money. The two men took 10,000 lempiras, which was all of the money on hand. Diaz-Gonzales reported the incident to the police, who laughed and did not write a report.

Following the December 2014 incident, Diaz-Gonzales told her husband about both the latest robbery and the earlier extortion scheme. The family decided that Diaz-Gonzales and Sanchez-Diaz should seek refuge in the United States. The two felt compelled to leave Honduras because of the extortion, plus discrimination against those with HIV. They paid $8,500 to guides to help them make the journey.

After two weeks of travel, Diaz-Gonzales and Sanchez-Diaz crossed into the United States near Hidalgo, Texas in March 2015. The two surrendered themselves to authorities because Sanchez-Diaz could no longer walk. They have since been residing in Michigan, where Diaz-Gonzales receives treatment for her HIV. Her treating physician reports that the medications she takes in the United States are more effective than what she took in Honduras and that her health "may be compromised should Mrs. Diaz-Gonzales have to return back to Honduras."

Diaz-Gonzales and Sanchez-Diaz appeared before an immigration judge in June 2015 and admitted to entering the United States without lawful permission to do so. In October 2015, the two applied for asylum and withholding of removal. At a hearing, both testified about the violence and discrimination in Honduras. The IJ found them to be credible witnesses, but denied their application for failure to meet the legal requirements for asylum and withholding of removal.

Diaz-Gonzales and Sanchez-Diaz appealed to the BIA. The BIA pointed out that the petitioners had failed to establish a nexus between the discrimination and violence in Honduras and membership in a "particular social group" as required by the Immigration and Nationality

Act (INA). The mother and daughter now timely petition this court for review of the BIA decision.

## II. DISCUSSION

We have jurisdiction under 8 U.S.C. § 1252(a) over appeals of final orders of removal. We review the BIA's decision as the final agency determination. *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). Conclusions of law are reviewed de novo and findings of fact are reviewed to determine whether they are supported by substantial evidence. *Id*.

For the court to grant relief through either asylum or withholding of removal, petitioners must show that they are "refugees." 8 U.S.C. § 1158(b)(1)(B)(i) ("burden of proof is on the applicant to establish that the applicant is a refugee" for asylum); *id*. § 1231(b)(3)(C) (incorporating similar showing for withholding of removal). The INA defines a refugee as someone "who is unable or unwilling to return to [his or her native country] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*. § 1101(a)(42)(A). "Persecution entails punishment or the infliction of suffering or harm, but harassment or discrimination without more does not rise to the level of persecution." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389-90 (6th Cir. 1998)). A particular social group is "a group of persons all of whom share a common immutable . . . [and] fundamental characteristic that either cannot be changed or should not be required to be changed because it is fundamental to the members' individual identities or consciences." *Khozhaynova v. Holder*, 641 F.3d 187, 195 (6th Cir. 2011) (quoting *Lugovyj v. Holder*, 353 F. App'x 8, 10 (6th Cir. 2009)).

A. Business Owners Subject to Extortion and Persecution

In the proceedings below, Diaz-Gonzales claimed membership in the particular social group of business owners subject to extortion and persecution. (AR 14-18) The BIA determined that this group was "not cognizable under the [INA] as it [was] impermissibly defined by the harm its members have suffered." (AR 3) In *Khozhaynova*, we pointed out "that one's status as a business owner who refuses to pay extortion demands does not constitute a protected social group." 641 F.3d at 195 (citing *Lugovyj*, 353 F. App'x at 10; *Jelkovski v. Ashcroft*, 103 F. App'x 578, 579 (6th Cir. 2004)). Because Diaz-Gonzales does not pursue this argument on appeal, the issue is forfeited. *Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006). We note, however, that the unfortunate events that stem from Diaz-Gonzales's status as a business owner are "insufficient to establish persecution on the basis of . . . a protected social group." *Khozhaynova*, 641 F.3d at 195.

B. Persons Living with HIV

Diaz-Gonzales now argues that she is a member of the particular social group of persons living with HIV. Based on the petitioners' credible testimony, the IJ found that Diaz-Gonzales's "HIV status was one of many reasons for the difficulty in running her business." But the business also suffered from extortion and a general economic downturn. The BIA concluded that Diaz-Gonzales established membership in the social group of those living with HIV and faced verbal harassment and a decline in business because of it. But Diaz-Gonzales did not establish that she "experienced harm rising to the level of past persecution." We agree with the BIA that Diaz-Gonzales has not provided evidence of past persecution based on her status as a person with HIV. She describes disparaging comments from family members and the community, but this does not rise to the level of persecution as required by *Ali*. 366 F.3d at 410.

The BIA also concluded that Diaz-Gonzales failed to provide evidence to support a well-founded fear that she faced future persecution from "Honduran authorities, or any private actors" should she return to Honduras. In *Valasquez-Banegas v. Lynch*, the Seventh Circuit recently examined an appeal from a Honduran petitioner who claimed to fear future persecution because he has HIV and is therefore perceived in Honduran society as being homosexual. 846 F.3d 258, 259 (7th Cir. 2017). The court remanded the case to the agency to reconsider evidence in the record, particularly testimony of a professor of Latin American studies, that pointed to the perception of persons with HIV as homosexual and the risks of violent and non-violent persecution facing homosexuals in Honduras. *Id*. at 262-64.

In this case, Diaz-Gonzales does not argue that she faces the risk of violence due to the perception that she is homosexual. Unlike in *Valasquez-Banegas*, Diaz-Gonzales did not have an expert testify to the credible fear of future persecution. Instead, Diaz-Gonzales points to the U.S. Department of State Country Reports on Human Rights Practices for 2014 that says in Honduras "persons with HIV/AIDS faced discrimination in employment and occupation" despite laws prohibiting that discrimination. The Country Report also notes that "the lack of work and educational opportunities and access to health services continued to be the major challenges for persons with HIV/AIDS." As an example, only one prison in Honduras had an antiretroviral program to treat HIV, but that prison "did not have necessary materials to test for or diagnose HIV/AIDS."

Although Diaz-Gonzales and Sanchez-Diaz have pointed out very real challenges facing those with HIV in Honduras, we must agree with the BIA that they have failed to provide sufficient evidence to support a well-founded fear of future persecution based on Diaz-Gonzales's status as a person with HIV. Much as the past discrimination against Diaz-Gonzales failed to rise to the level of persecution, her stated fears about future discrimination fail to rise to

the level of persecution. The Country Reports do corroborate those fears in a general way, but do not provide information that is sufficient to change the result here. Most of the evidence points to the financial hardships of extortion and other criminal activity, and Diaz-Gonzales has not shown that economic hardship due to decreased business caused by the stigma of HIV is "sufficiently severe" to rise to the level of economic persecution. *See Scavenger v. Mukasey*, 313 F. App'x 816, 818 (6th Cir. 2008) (citing *In re T-Z*, 241 I. & N. Dec. 163, 171-73 (BIA 2007)) ("[A]sylum applicants . . . must establish that they faced a deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.")

C. Humanitarian Asylum

Diaz-Gonzales and Sanchez-Diaz claim to be eligible for asylum on a humanitarian basis. Diaz-Gonzales and her treating doctor in the United States point out that medical care in Honduras will not be as effective as that in the United States. This argument was not made before the BIA, and we lack jurisdiction to address a claim that has not exhausted the administrative process. *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (discussing the statutory exhaustion requirement in 8 U.S.C. § 1252(d)(1)).

D. Withholding of Removal

To be eligible for withholding of removal, petitioners must show that they are refugees. 8 U.S.C. § 1231(b)(3)(C). As discussed above, Diaz-Gonzales and Sanchez-Diaz have failed to show past persecution or a well-founded fear of future persecution based on membership in a particular social group. Their petition for withholding of removal therefore also fails.

For the foregoing reasons, we **DISMISS** the petition for review of Diaz-Gonzales and Sanchez-Diaz.