NOT RECOMMENDED FOR FULL-TEXT PUBLICATON
File Name:  14a0280n.06

No. 13-3333

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 15, 2014
DEBORAH S. HUNT, Clerk

LEI CHEN,                                              )
                                                       )
      **Petitioner,**                               )        ON PETITION FOR REVIEW OF
                                                       )        AN ORDER OF THE BOARD OF
v.                                                     )        IMMIGRATION APPEALS
                                                       )
ERIC H. HOLDER, JR., Attorney General,                 )
                                                       )        **OPINION**
      **Respondent.**                              )
                                                       )

Before:  MOORE and COLE, Circuit Judges; DRAIN, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.**  Lei Chen petitions this court to review
the denial of his application for asylum and withholding of removal by an immigration judge
("IJ") and the Board of Immigration Appeals ("BIA").  The IJ found petitioner and his witness
not credible and denied the application.  The BIA affirmed without opinion.  Chen argues that
the immigration judge erred in making both adverse credibility findings and that the IJ failed to
give proper weight to Chen's testimony.  Because of jurisdictional limits, we must **DISMISS** the
petition in part, and because the adverse credibility findings are supported by substantial
evidence, we **DENY** all remaining claims.

**I.  BACKGROUND**

Lei Chen, a citizen and national of the People's Republic of China ("China"), claimed to
have entered the United States on November 20, 2008.  According to his testimony, he is a

---

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District
of Michigan, sitting by designation.

Christian who was persecuted in China due to his religious beliefs. He filed an affirmative application for asylum on November 17, 2009. On January 15, 2010, the Department of Homeland Security issued a Notice to Appear, commencing removal proceedings. Administrative Record ("A.R.") at 42 (Oral Decision and Order of the Immigration Judge ("Oral Dec.") at 1). Before the immigration judge ("IJ"), Chen conceded removability, but sought asylum and withholding of removal under the Immigration and Nationality Act ("INA") as well as withholding of removal under the Convention Against Torture ("CAT"). *Id.* at 43–44 (Oral Dec. at 2–3).

The evidence presented to the IJ is not in dispute. Chen submitted a number of exhibits, testified personally, and had a witness testify on his behalf. *Id.* at 44 (Oral Dec. at 3). Chen testified that he was born and grew up in China. *Id.* at 45 (Oral Dec. at 4). As a child, he attended the government-sanctioned Christian church. *Id.* He was baptized at the government church on May 10, 2007. *Id.* at 48 (Oral Dec. at 7).[1] Soon thereafter, he was introduced to and began attending a family church, an unsanctioned church which meets at various places and attempts to worship free of government interference. *Id.* at 45 (Oral Dec. at 4). His attendance at the family church began on May 20, 2007,[2] and he preferred its teachings and greater religious freedom. *See id.* Chen was willing to risk the legal consequences of attending the unlawful gatherings of the family church. *Id.* at 46 (Oral Dec. at 5).

---

[1]Chen stated that he was baptized on May 10, 2007, which was a Sunday. A.R. at 147 (Tr. of Hr'g, February 28, 2011, at 36). May 10, 2007, was actually a Thursday.

[2]May 20, 2007, was, in fact, a Sunday making attendance at a different Sunday service ten days earlier impossible.

According to Chen's testimony, the family church was raided by the police on either February 10, 2008, August 10, 2008, August 20, 2008, or several of these dates.[3] *Id.* Along with other church members, he was arrested and detained for one day. *Id.* The police warned Chen not to attend the family church and forced him to sign a guarantee that he would not do so again or otherwise face imprisonment. *Id.* The family church was again raided by the police on August 24, 2008.[4] *Id.* Chen escaped arrest and hid at a friend's home. *Id.* According to Chen, his mother told him not to return home because the police had been there looking for him. *Id.* According to Chen, the police returned to his home on September 4, 2008, and beat his father to try to find out from him where Chen was hiding. *Id.* At this point, Chen made the decision to leave China, which his parents supported. *Id.* at 46–47 (Oral Dec. at 5–6).

According to Chen, his parents borrowed money in order to pay snakeheads, a Chinese gang that specializes in human smuggling, to sneak him out of China and into the United States for $58,000. *Id.* at 47 (Oral Dec. at 6). The smugglers made all of the arrangements that included transport within China and then to Hong Kong, a flight to Paris, a flight to Mexico City, a border crossing into the U.S., a trip to Houston, and the final drop-off in New York City. *Id.* As part of his trip, Chen took a bus from Changle City to Senzheng. *Id.* at 50–51 (Oral Dec. at

---

[3]In his later testimony, Chen claims never to have said February 10 or August 20, but rather to have always said August 10. A.R. at 149–50 (Tr. of Hr'g, February 28, 2011, at 38–39). The record, however, captures that he did state that he was first arrested on February 10, 2008. *See id.* at 135 (Tr. of Hr'g, February 28, 2011, at 24). Moreover, he also stated that he was arrested on August 20, 2008. *Id.* at 136 (Tr. of Hr'g, February 28, 2011, at 25).

[4]In her oral decision, the IJ stated that "[Chen] was again arrested on August 24, 2008." *Id.* The IJ clearly misspoke as she noted in the following sentence that "[Chen] was sitting near the door and was able to escape when they came." *Id.*

9–10). According to Chen, he brought the receipt from this portion of his trip to the United States with him, along with a receipt for a hotel in China where he stayed along his trip, and submitted these receipts to the court. *Id.* Chen testified that he brought these receipts to the United States in his wallet. *Id.* at 51 (Oral Dec. at 10).

According to Chen, he arrived in the United States on November 20, 2008. *Id.* at 47 (Oral Dec. at 6). A smuggler instructed him to call his mother from his location in Houston to inform her that he was in the United States and that she should pay them. *Id.* His mother told Chen the date. *Id.*

Chen then moved to Kentucky on December 5, 2008. *Id.* In Kentucky, he joined the Chinese Christian Church in January 2009. *Id.* At the hearing, Chen communicated that he feared returning to China because his parents had told him that the police are still planning to arrest him for attending the unsanctioned church. *Id.* at 48 (Oral Dec. at 7).

Chen offered the testimony of a witness, Nen Juan Lin. *Id.* at 52 (Oral Dec. at 11). She testified that Chen became a regular member of the Chinese Christian Church in Louisville, Kentucky, in January 2009. *Id.* They spoke in church and shared meals afterwards. *Id.* She provided little detail on his past, as she claimed that they did not discuss their past experiences in depth. *Id.* She did, however, state that she knew Chen had been arrested in China and that Chen stated that the police were still looking for him. *Id.* at 52–53 (Oral Dec. at 11–12). In terms of their discussions of Christianity, Lin stated that they spoke about how Jesus died on the cross for their sins. *Id.* at 53 (Oral Dec. at 12).

While Chen did not submit statements from his family, who are farmers in China, he did submit his baptism certificate from the government-sanctioned church and a notarial certificate, which were obtained by his parents and sent to him in the United States. *Id.* at 51 (Oral Dec. at 10).

The IJ found both Chen and his lone witness not credible. *Id.* at 59, 62 (Oral Dec. at 18, 21). The IJ articulated seven reasons why Chen was not credible. *Id.* at 59–62 (Oral Dec. at 18–21). First, the receipts provided by Chen were "in pristine condition" with no creases or folds, undermining Chen's claim that he brought them with him from China to the United States in his pocket-sized wallet. *Id.* at 59–60 (Oral Dec. at 18–19). Second, Chen erred on his baptism date, shown by his assertion that he was baptized on Sunday, May 10, 2007, whereas May 10, 2007, was actually a Thursday. *Id.* at 60 (Oral Dec. at 19). Third, while Chen testified that his father was beaten by the police, his asylum application statement said that the police broke furniture and did not state that his father was beaten. *Id.* Fourth, Chen was inconsistent as to the dates of his arrest or arrests. *Id.* at 60–61 (Oral Dec. at 19–20). Fifth, the timing of Chen being baptized at the government-sanctioned church on a Sunday and then attending the family church Sunday service ten days later was "curious" and not possible. *Id.* at 61 (Oral Dec. at 20). Sixth, the IJ found implausible Chen's story that he was recognized by the police (because he was tall and they could see him) during their August 24, 2008, raid but that he was able to escape. Finally, the IJ found Chen not credible because he lacked credible corroborating documents, declarations, and witnesses. *Id.* at 61–62 (Oral Dec. at 20–21). Similarly, the IJ found Chen's lone supporting witness not credible because the IJ found it improbable that the two, having shared these similar

experiences, would not have discussed them over the two years they had known each other. *Id.* at 62 (Oral Dec. at 21). Second, the IJ faulted the witness for stating that the two had conversations about their Christianity, but failing to provide specifics regarding anything they discussed other than Jesus dying on the cross for their sins. *Id.*

Based on the credibility findings and the absence of corroborating evidence of the date of Chen's entry into the United States, the IJ concluded that Chen had not established that his entry into the United States came within one year of his asylum application being filed. *Id.* at 63 (Oral Dec. at 22). In the alternative, even if the asylum claim were timely filed, the IJ rejected both Chen's asylum claim and his withholding of removal claim under the INA for lack of credible evidence. *Id.* at 63–64 (Oral Dec. at 22–23). Finally, the IJ rejected the CAT claim as not having been established by credible evidence. *Id.* at 64 (Oral Dec. at 23). The IJ ordered Chen's removal to China. *Id.* at 65 (Oral Dec. at 24).

The BIA affirmed without opinion the IJ's determination. A.R. at 3 (Decision of the Board of Immigration Appeals). This petition for review timely followed.

## II. DISCUSSION

Chen presents three arguments in his opening brief. First, he contends that the IJ "erred as a matter of fact, by finding that [Chen] was not a credible witness." Appellant Br. at 20. Second, he argues that the IJ "erred, as a matter of fact, by finding that [Lin] . . . was not credible." *Id.* at 30. Finally, he posits that the IJ "erred, as a matter of law and fact, . . . in failing to give [Chen]'s testimony sufficient weight where other documentation for establishing [Chen]'s eligibility for asylum was unavailable." *Id.* at 32. Chen readily admits that his final

argument rests on reversing the factual credibility determination. *Id.* at 33 (stating that "[a]s [Chen] should have been found credible, his testimony should have been sufficient . . . to establish his claim for asylum, since, his testimony, if accepted as credible, clearly establishes past persecution and both an objective and subjective well-founded fear of future persecution").

On the asylum claim, the government argues that we cannot review the IJ's conclusion because it rests on a finding that Chen failed to "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of [his] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The government contends that Chen has waived any argument by not explicitly challenging this conclusion by the IJ. The government also posits that we lack jurisdiction to review the IJ's conclusion because the REAL ID Act of 2005 ("REAL ID Act"), Pub. L. No. 109–13, 119 Stat. 302, limited our jurisdiction to review asylum-application-timeliness determinations. The government finally claims that we must affirm the IJ's decision as to both asylum and withholding of removal because the IJ's adverse credibility finding is supported by substantial evidence.

## A.  Asylum

First, we reject the government's argument that Chen waived any challenge that his asylum application was timely. While Chen's briefing focuses on the credibility determinations, the IJ made clear that it is "[d]ue to the lack of credibility . . . and the unreliability of the documents and the failure of [Chen] to provide details or other corroborating evidence of his entry date, [that Chen] has not met his burden to establish his entry within one year of the filing of his application." A.R. at 63 (Oral Dec. at 22). Thus, attacking the credibility determination

gets at the heart of the IJ's decision that Chen failed to prove that his application was filed within a year of his entry. If Chen, his witness, and his documentary submission are found to be credible, then they do provide a basis on which an IJ would have to conclude that his application was filed within the statutory period.

Chen's arguments for the timeliness of his asylum application rest, as Chen's opening brief repeatedly points out, on the factual determinations that neither Chen nor his witness are credible. The REAL ID Act, however, limited our jurisdiction when reviewing asylum-application-timeliness determinations to only constitutional or statutory questions. *See* 8 U.S.C. § 1158(a)(3); *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011) ("Under the REAL ID Act of 2005, we have jurisdiction to 'review asylum applications denied for untimeliness only when the appeal seeks review of constitutional claims or matters of statutory construction, not when the question is discretionary or factual.'") (quoting *Shkulaku–Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007)); *see also Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (holding that we are barred from reviewing "asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction"); *Ngam v. Holder*, --- F. App'x ---, 2014 WL 803910, at *1 (6th Cir. 2014) (concluding that the panel lacked jurisdiction to review an asylum denial based on untimeliness where the immigrant "raise[d] no constitutional or statutory issue, disputing only the IJ's evidentiary and credibility determinations"). Thus, we lack jurisdiction to review Chen's asylum claim because of the IJ's factual determination of untimeliness, and we must dismiss this part of the petition for review.

## B. Withholding of Removal

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Chen bears the burden of establishing his eligibility for withholding of removal. *See* 8 U.S.C. § 1158(b)(1)(B); 8 U.S.C. § 1231(b)(3)(C). When the BIA affirms without opinion, we review whether the IJ's factual findings are supported by substantial evidence. *See Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir. 2008). Under the substantial evidence standard, we must accept the IJ's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Credibility determinations are now governed by the REAL ID Act. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). The Act states in relevant part:

> Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1229a(c)(4)(C). The IJ articulated many specific reasons why she found Chen, his witness, and his documentary evidence to be not credible. While we may not agree that each articulated reason suggests that Chen is not credible, the IJ does base her finding that Chen is not

credible on some valid reasons. For example, Chen testified that he brought certain receipts with him from China to the United States in his pocket-sized wallet. A.R. at 168–69 (Tr. of Hr'g, February 28, 2011, at 57–58). Yet, the IJ noted that the receipts were in pristine condition without a fold or crease. A.R. at 59 (Oral Dec. at 18). Similarly, at the hearing, Chen testified that after he escaped arrest on August 24, 2008, the police came to his home looking for him and beat his father, who would not tell them where Chen was hiding. A.R. at 135–36 (Tr. of Hr'g, February 28, 2011, at 24–25). However, as the IJ pointed out, A.R. at 60 (Oral Dec. at 19), Chen failed to state that his father was beaten in his written submission to an asylum officer, noting instead that after he escaped arrest on August 24, 2008, the police came to his house looking for him and broke furniture, A.R. at 466, 472 (Application for Asylum and for Withholding of Removal at 5 and attachment). While such inconsistencies may not in all cases be significant, they are sufficient in this case under the REAL ID Act to support the finding that Chen is not credible. *See* 8 U.S.C. § 1158(b)(1)(B)(iii).[5]

Similarly, the IJ's conclusion that Chen's supporting witness was not credible is supported by the improbability that she and Chen would not have discussed over the past two years their experiences as Christians persecuted in China and by the lack of detail in her testimony regarding her conversations with Chen about Christianity. Finally, the IJ's rejection of

---

[5]We recognize that the REAL ID Act requires significant deference to an IJ's credibility determination, but we do not defer to an unreasonable determination that an immigrant is not credible. *See Slyusar v. Holder*, 740 F.3d 1068, 1074–75 (6th Cir. 2014). As other jurists have emphasized, asylum seekers "often confuse the details of particular incidents, including the time or dates of particular assaults and which specific actions occurred on which specific occasion; thus, the ability to recall precise dates of events years after they happen is an extremely poor test of how truthful a witness's substantive account is." *Id.* at 1075 (internal quotation marks omitted) (quoting *Yaogang Ren v. Holder*, 648 F.3d 1079, 1085–86 (9th Cir. 2011)).

the documentary evidence Chen submitted is supported by a clearly articulated reason suggesting that important pieces of that evidence were fabricated. The IJ's conclusion that Chen, his witness, and his documentary evidence are not credible is supported by substantial evidence. Consequently, Chen cannot demonstrate that the evidence presented to the IJ compels a different result.

The adverse credibility finding is fatal to Chen's withholding of removal claim (as it would be also to Chen's asylum claim were we to have jurisdiction to reach that claim). *See Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014). We must deny Chen's petition for review challenging the IJ's denial of Chen's withholding of removal claim.

## C. CAT

Chen does not raise his CAT claim before us. Therefore, it is waived. *See Bi Feng Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009).

## III. CONCLUSION

For the foregoing reasons, we **DISMISS** for lack of jurisdiction the petition for review of Chen's asylum application, and we **DENY** the remainder of his petition for review.